IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, a minor, through KRISTEN D., Guardian ad Litem,<br><br>Plaintiff,<br><br>v.<br><br>WILLITS UNIFIED SCHOOL DISTRICT, WILLITS CHARTER SCHOOL, SALLY RULISON, CLINT SMITH, and DOES 1-40,<br><br>Defendants.<br>_____/ | No. C 09-03655 JSW<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

Now before the Court is the motion for judgment on the pleadings filed by Willits Charter School ("WCS") and Defendant Sally Rulison ("Rulison") in her official capacity as principal of WCS. The motion is now fully briefed and ripe for decision. The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for March 12, 2010 is HEREBY VACATED. Having carefully reviewed the parties' papers and the relevant legal authority, the Court GRANTS WCS's and Rulison's motion for judgment on the pleadings. The Court also DISMISSES *sua sponte* Plaintiff Jane Doe ("Plaintiff")'s Section 1983 claim against the Willits Unified School District ("WUSD").

**BACKGROUND**

Plaintiff brings a complaint against Defendants WCS, Rulison as principal of WCS, and WUSD under, *inter alia*, 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972,

20 U.S.C. § 1681(a). These claims arise from an allegation that Plaintiff and her teacher, Defendant Clint Smith ("Smith"), engaged in a sexual relationship while Plaintiff was enrolled at WCS. Plaintiff, who was fifteen years old at the time of the alleged conduct, attended WCS during the 2007-2008 and 2008-2009 school years. (Compl. at ¶¶ 1, 18.) Smith was employed by WCS as Plaintiff's teacher. (Answer at ¶ 9.)

WCS is a charter school, located in Mendocino County, California, and is designated to administer laws and programs related to the education of children pursuant to a charter granted by the Willits Unified School District pursuant to the California Charter Schools Act of 1992. (Compl. at ¶¶ 7, 9.) WCS receives federal funding assistance. (Answer at ¶ 16.) Rulison is currently, and was during the relevant time period, employed by WCS as its principal. (Compl. at ¶ 8.) Her official duties include implementing the policies of the Willits Charter School Board of Directors and overseeing day-to-day operations of the school. (*Id.*)

On December 30, 2009, WCS and Rulison moved for judgment on the pleadings, challenging both the legal sufficiency of Plaintiff's Section 1983 claim against WCS and Rulison in her official capacity, as well as Plaintiff's Title IX claim against Rulison.

The Court will address additional facts as necessary in its analysis.

## ANALYSIS

**A. Legal Standard on Motion for Judgment on the Pleadings.**

Motions for judgment on the pleadings challenge the legal sufficiency of the claims asserted in the complaint. "For purposes of the motion, the allegations of the non-moving party must be accepted as true. Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (internal citations omitted); *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Even under the liberal pleading standard of Rule 8(a), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct sufficient to state a conceivable claim, but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal citation and quotation marks omitted).

However, "[t]he court need not ... accept as true allegations that contradict matters properly subject to judicial notice." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). While, as a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(c) motion, a "court may consider facts that are contained in materials of which the court may take judicial notice." *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (internal quotations and citation omitted).

**B**.    **Plaintiff's Request for Judicial Notice.**

Plaintiff asks the Court to take judicial notice of two documents: (1) a template Memorandum of Understanding ("Template MOU") between the California Department of Education; and (2) a purported record of incorporation for the Charter School Association of Willits. (Request for Judicial Notice ("RJN"), Exs. 1, 2.) Federal Rule of Evidence 201(b) authorizes a court to take judicial notice of facts "capable of accurate and ready determination

3

by resort to sources whose accuracy cannot reasonably be questioned." The incorporation by reference doctrine permits a court to consider documents alleged in a complaint and whose authenticity no party questions, but that are not physically attached to a complaint. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). A court may take judicial notice of "matters of public record," but may not "take judicial notice of a fact that is 'subject to reasonable dispute.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689-690 (9th Cir. 2001) (citing Fed. R. Evid. 201(b)).

Plaintiff requests that the Court to take judicial notice of the Template MOU, which is not referenced in the complaint, but which Plaintiff relies on in her opposition to the motion for judgment on the pleadings. (RJN, Ex. 1.) Because the Template MOU is not probative as to whether WCS's specific charter follows the state template or contains similar provisions, the Template MOU is not relevant to the disposition of the motion. Accordingly, the Court declines to take judicial notice of the Template MOU.

Plaintiff also requests that the Court to take judicial notice of the record of incorporation for the Charter School Association of Willits. (RJN, Ex. 2.) Although not explicitly referenced in the complaint, the business entity detail is a public document, available from the website of the California Secretary of State. Defendant does not challenge the authenticity of the document. Accordingly, the Court takes judicial notice of the record of incorporation.

**C.  Plaintiff's Section 1983 Claim is Dismissed as to WCS and Rulison in Her Official Capacity.**

Defendants challenge Plaintiff's Section 1983 claim on the ground that WCS, as a charter school, is by law an "arm of the state" for Eleventh Amendment immunity purposes, and therefore is not a *person* liable under Title 42 U.S.C. § 1983.

Title 42 U.S.C. § 1983 provides, in relevant part, that "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party." 42 U.S.C. § 1983 (emphasis added). "Accordingly, only those governmental entities which are 'persons' within the meaning of § 1983 can be held liable

4

under § 1983." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1442-43 (9th Cir. 1989). "States or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes are not persons within the meaning of § 1983." *Id.* at 1443 (citation and internal quotation marks omitted). Therefore, under the Eleventh Amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

The question of whether a particular state agency has independent status or is considered an "arm of the state" for Eleventh Amendment analysis is a question of federal law, but one that "can be answered only after considering the provisions of state law that define the agency's character." *Regents of the University of California v. Doe*, 519 U.S. 425, 430 n.5 (1997). Determining whether a state agency is entitled to Eleventh Amendment immunity turns on the multi-factored balancing test summarized in *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). The *Mitchell* test looks to the following five factors to determine whether a state government agency qualifies an "arm of the state:" (1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only the name of the state, and (5) the corporate status of the entity. *Mitchell*, 861 F. 2d at 201. In *Belanger v. Madera Unif. Sch. Dist.*, the Ninth Circuit employed the *Mitchell* analysis and held that California school districts are "arms of the state" for the purposes the Eleventh Amendment. 963 F.2d 248, 251 (9th Cir. 1992).

Neither the Court nor the parties have located any published cases addressing whether California charter schools, like school districts, are considered "arms of the state" under Eleventh Amendment immunity analysis. After reviewing the relevant legal authorities and California statutes, this Court applies the *Mitchell* five-factor test, as adopted in *Belanger*, to WCS, and finds that WCS, as a charter school, is an "arm of the state" for Eleventh Amendment immunity purposes.

As a threshold matter, Plaintiff does not dispute that WCS meets the last three factors of the *Mitchell* test as adopted in *Belanger*. (Opp. Br. at 10.) Rather, the focus of the parties'

dispute is on the first two *Mitchell* factors: (1) whether a money judgment against WCS would be satisfied out of state funds; and (2) whether WCS performs a central governmental function. *See Belanger*, 963 F.2d at 250-51. This Court addresses each issue in turn.

### 1. A money judgment against WCS would be satisfied out of state funds.

Defendant argues that a money judgment against WCS would be satisfied out of state funds, thus fulfilling the first factor of the *Mitchell* test. Plaintiff does not dispute that charter schools, like WCS, are funded by the state, but argues that state funding is for educational purposes only, such that the state would not be liable for judgments against a charter school. (Opp. Br. at 5.)

The "first and most important factor" in the *Mitchell* analysis is whether the judgment against the entity would be satisfied out of state funds. *Belanger,* 963 F.2d at 251. School districts in California are funded pursuant to a formula that sets a "revenue limit for each school district based on average daily attendance, subtracts property tax revenues from that limit, and allocates the balance to the school district from the state school fund." *Id.* at 252 (citing Cal. Educ. Code §§ 41600-41610, 42238-42251 (West 1978 & Supp. 1992)). Charter schools are deemed to be a "school district" for appropriations purposes. Cal. Educ. Code § 47612; *see also Wilson v. State Board of Educ.,* 75 Cal. App. 4th 1125, 1137 (1999) (noting that the California legislature has explicitly found that charter schools are entitled to full funding and that the Charter Schools Act "shall be liberally construed to effectuate [these] findings.") (internal quotations and citations omitted). Accordingly, a charter school's "general purpose entitlement" is funded from the same "revenue-limit" funding formula used for school districts. Cal. Educ. Code §§ 47630(a), 47633(a). This "[g]eneral-purpose entitlement funding may be used for any public school purpose determined by the governing body of the charter school." Cal. Educ. Code § 47633(c). The Eleventh Amendment "protect[s] the state treasury from liability that would have had *essentially the same practical consequence* as a judgment against the State itself." *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979) (emphasis in original). Where the effect of a judgment against an entity such as a school district "effectively draws state funds away from other programs in the budget to pay the

judgment," the first factor of *Mitchell* is implicated because "state funds in the budget must cover any critical educational expenses" that the funds covering the judgment "would have covered absent the judgment." *Belanger*, 963 F.2d at 252.

The Court finds that charter schools are similarly situated to school districts, at least for funding purposes, because the California legislature intended that charter schools be deemed "school districts" for appropriations purposes. Cal. Educ. Code § 47612. Under *Belanger*, school districts are considered arms of the state for Eleventh Amendment immunity purposes, in part because judgments against school districts are satisfied by state funds. 963 F.2d at 252. Pursuant to the California Education Code, WCS, as a charter school, also receives its general purpose funding from the state under the same revenue-limit calculation that funds school districts. Cal. Educ. Code §§ 47630(a), 47633(c); *Wilson*, 75 Cal. App. 4th at 1137. Plaintiff does not dispute that WCS is funded according to this statutory scheme. Because *Belanger* held that judgments are satisfied with state funds either when the judgment is directly satisfied by state funds or where the funds used to satisfy the judgment create a shortfall in the general budget which must then be made up by state funds, the Court finds that a money judgment against WCS would be drawn from state funds, thus satisfying the first factor of the *Mitchell* analysis.

### a. Plaintiff's argument that liability insurance negates the fact that a judgment against WCS would be funded by the state is unpersuasive.

Plaintiff argues that a monetary judgment against WCS would not be funded by the state treasury because WCS maintains general liability insurance either through its own insurance carrier or through a joint powers agreement for risk-pooling. (Opp. Br. at 12.)

Plaintiff's argument that WCS may have general liability insurance through its own carrier or through a joint powers agreement for risk pooling is irrelevant as to whether a judgment against WCS would ultimately be drawn from state funds. Plaintiff's argument primarily relies on unsupported inferences drawn from the Template MOU, which the Court was unable to judicially notice. (Opp. Br. at 8-11.) The presence of liability insurance is irrelevant because it is WCS's "potential legal liability, rather than its ability or inability to

7

require a third party to reimburse it" that is relevant to the Eleventh Amendment immunity analysis. *See Regents of the University of California*, 519 U.S. at 904. If WCS has general liability insurance, Plaintiff has not plead a facially plausible claim permitting the Court draw the reasonable inference that a money judgment against WCS would be funded, either directly or indirectly, by a source other than funds provided to WCS by the state. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombley*, 550 U.S. at 556.) Lastly, if WCS were to participate in a risk-pooling agreement, the risk-pool would be populated, in part, by other public agencies, which can include "any state department or agency." *See* Cal. Gov. Code § 6500; Cal. Gov. Code § 6528 (providing that charter schools, including those organized as nonprofit public benefit corporations, may be deemed "public agencies" for purpose of being eligible for membership in a joint powers agreement for risk-pooling). These risk-pool funds covering a judgment against WCS would be drawn, at least in part, from state funds contributed to the risk pool by other state entities. Accordingly, Plaintiff's argument that the possibility of insurance obviates the first factor of *Mitchell* is unpersuasive. A money judgment against WCS would be satisfied by state funds.

### b. Plaintiff's reliance on California law does not strip WCS of its "arm of the state" status for Eleventh Amendment immunity purposes.

Plaintiff also argues that because California courts have found that charter schools may be sued for monetary damages under the California False Claims Act ("CFCA"), and are not entitled to government immunity under the California Government Tort Act, WCS is not an "arm of the state." (Opp. Br. at 13.)

In *Wells v. One2One Learning Foundation*, the California Supreme Court held that for the purposes of the CFCA, charter schools, operated as nonprofit public benefit corporations, were not entitled to "public entity" immunity because, as corporations, they were statutorily defined "persons" under the CFCA. 39 Cal. 4th 1164, 1200-02 (2006).

Plaintiff's reliance on *Wells* is misplaced in the context of the Eleventh Amendment immunity analysis. WCS's status as a nonprofit public benefit corporation is irrelevant for analysis of the first factor of the *Mitchell* test; it does not change the fact that WCS receives

8

state funding that would be used directly or indirectly to satisfy a judgment against WCS. The *Wells* Court's observation that *a chartering authority* is immune from financial liability for a charter school's "debts and obligations," including those involving "claims arising out of acts, errors, or omissions by the ... school" similarly does not alter the fact that Plaintiff fails to allege plausibly in his complaint that a judgment *against WCS* would be paid for by funds other than those allocated to WCS by the state at some point in the funding process. *Wells*, 39 Cal. 4th at 1201 (citing Cal. Educ. Code § 47604(c)). Therefore, Plaintiff's reliance on California law does not change the outcome under the critical first factor of *Mitchell*.[1]

### 2. WCS performs a central government function.

Defendant argues that WCS, as a California charter school, performs a central governmental function, thus satisfying the second factor of the *Mitchell* test for Eleventh Amendment immunity.

"California law is well settled that providing public education is a state function." *Belanger*, 963 F.2d at 253. "[C]harter schools *are* public schools because ... [they] are part of the public school system ... [and] are under the 'exclusive control of the officers of the public schools.'" *Wilson*, 75 Cal. App. 4th at 1139 (emphasis in original) (citing Cal. Educ. Code § 47615(a)). "Although [charter schools] have operational independence, an overarching purpose of the charter school approach is to infuse the public school system with competition in order to stimulate improvement in *all* its schools." *Id.* (emphasis in original) (citing Cal. Educ. Code § 47601(g)).

As a charter school, WCS performs a central government function. Plaintiff's reliance on *Knapp* for the proposition that "charter schools operate independently of the central government of California" is misplaced. (Opp. Br. at 12-13 citing *Knapp*, 146 Cal. App. 4th at

---

[1] This Court similarly finds Plaintiff's reliance on *Knapp v. Palisades Charter High School* to be unpersuasive. 146 Cal. App. 4th 708 (2007). In *Knapp*, the California Court of Appeal relied on the *Wells* Court's analysis of charter schools to hold that an incorporated charter school was not a "public entity" subject to the claim presentment requirement of the California Tort Claims Act. *Id.* at 716-17. The *Wells* Court's holding does not effect whether state funds ultimately would be used to satisfy judgments against WCS. Similarly, the *Knapp* Court's analysis does not alter the conclusion that the first factor of *Mitchell* analysis regarding whether a judgment would be satisfied with state funds tips in favor of Eleventh Amendment immunity.

9

714.) The *Knapp* Court noted that, in creating the Charter Schools Act, the legislature intended to establish "schools that operate independently from the existing school structure." 146 Cal. App. 4th at 714 (citing Cal. Educ. Code § 47601). However, this operational independence does not detract from the fact that WCS performs a central government function by providing public education. California law provides that "providing public education is a state function." *Belanger*, 963 F.2d at 253. California law acknowledges that charter schools are part of the public school system and that their operational independence helps charter schools to provide public education, a government function. *Wilson*, 75 Cal. App. 4th at 1139. Therefore, WCS performs a central government function and satisfies the second factor of the *Mitchell* analysis.

As WCS meets the first two factors of the *Mitchell* test, and the parties do not dispute that WCS satisfies the final three factors, the Court finds under the *Mitchell* test, charter schools, like school districts, are considered "arms of the state." *See Belanger*, 963 F.2d at 250-51. Governmental entities "that are considered 'arms of the state' for Eleventh Amendment purposes are not persons within the meaning of § 1983." *Thompson*, 885 F.2d at 1443 (citation and internal quotation marks omitted). "[O]nly those governmental entities which are 'persons' within the meaning of § 1983 can be held liable under § 1983." *Id.* at 1442-43. Therefore, the Court DISMISSES Plaintiff's Section 1983 claim against WCS with prejudice.

Defendant Rulison, sued under Section 1983 in her official capacity as principal of WCS, is also entitled to Eleventh Amendment immunity. *See Mitchell*, 861 F.2d at 201-02 (internal citations omitted) ("[I]ndividual defendants share in the district's eleventh amendment immunity because they were sued in their official capacities. Such suits 'are, in essence, actions against the governmental entity of which the officer is an agent.'"). Accordingly, the Court DISMISSES Plaintiff's Section 1983 claim against Rulison in her official capacity with prejudice.[2]

---

[2] Although WUSD has not moved for dismissal, this Court dismisses *sua sponte* Plaintiff's Section 1983 claims against WUSD. "Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised by a party at any time during judicial proceedings or by the court sua sponte." *In re Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999) (citing *Edelman v. Jordan*, 415 U.S. 651, 677-78 (1974); *see also Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 873 n.2 (9th Cir. 1987)

**D.     Plaintiff's Title IX Claim Is Dismissed.**

Defendant challenges Plaintiff's Title IX sex discrimination claim against Rulison on the grounds that Title IX liability does not extend to school officials, such as Rulison, as she is not a federal funding recipient. Plaintiff concedes this argument, but asks the Court to dismiss the claim with leave to amend if Plaintiff procures evidence that the parent corporation of WCS is an alter ego of Defendant Rulison and that, for this reason, she is a funding recipient subject to the government's enforcement power under Title IX. (Opp. Br. at 1.)

Plaintiff is required to allege actual facts which show a plausible and reasonable entitlement to relief, not merely a possibility of relief. *See Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556-57.) Federal Rule of Civil Procedure 15(a)(2) provides that the Court "should freely give leave when justice so requires." "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). "[C]ourts have consistently concluded that Title IX does not subject school officials to liability in their individual capacities." *Sherez v. State of Hawaii Dep't of Educ.*, 396 F. Supp. 2d 1138, 1145 (D. Hawaii 2005) (citing cases).

Here, the complaint does not set out any factual allegation indicating that Rulison is an alter ego or funding recipient of WCS. The submitted record for the Charter School Association of Willits, which notes Rulison as the agent for service of process, does not indicate Rulison is a funding recipient of WCS. (RJN, Ex. 2.) Accordingly, there are no facts alleged that support Plaintiff's Title IX claim against Rulison. However, the Defendant has not demonstrated futility of amendment, and Plaintiff has had no previous opportunity to amend her complaint, regarding her Title IX claim, to allege that Rulison is a federal funding recipient.

---

("Like a jurisdictional bar and unlike a traditional immunity, however, the effect of the Eleventh Amendment must be considered sua sponte by federal courts.")). As a California school district, WUSD is considered an "arm of the state" for Eleventh Amendment immunity purposes, and is therefore immune from Section 1983 liability. *See Belanger*, 963 F.2d at 251-53. The Court DISMISSES Plaintiff's Section 1983 claim as to WUSD with prejudice.

11

Accordingly, Plaintiff's Title IX claim against Rulison in her official capacity is DISMISSED with leave to amend, should any facts indicating this status emerge.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion for judgment on the pleadings as to Plaintiff's Section 1983 claim against WCS and Rulison in her official capacity, without leave to amend. The Court GRANTS Defendant's motion for judgment on the pleadings and dismisses Plaintiff's Title IX claim against Rulison with leave to amend. Further, the Court DISMISSES *sua sponte* Plaintiff's Section 1983 claim against WUSD without leave to amend.

This Order does not rule on the remaining claims in the complaint: the first cause of action for violation of Section 1983 as to Rulison in her individual capacity; the second cause of action for violation of Title IX as to WUSD, WCS, and Smith; or the third, fourth, or fifth causes of actions as alleged in the complaint. (Compl. at ¶ 55-7o6.)

**IT IS SO ORDERED.**

Dated: March 8, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE