IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JANE DOE,

        Plaintiff,

  v.

WILLITS UNIFIED SCHOOL DISTRICT, et al.,

        Defendants.

No. C-09-03655-JSW (DMR)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DEPOSITION**

Before the Court is defendants' Second Amended Motion to Compel Deposition, filed by defendants Willits Charter School and Sally Rulison on May 4, 2010 (Docket No. 61). Defendants Willits Unified School District and Clint Smith joined in the motion on May 12, 2010 and June 2, 2010, respectively (Docket Nos. 70, 94). After careful review of the parties' briefs and consideration of the arguments of counsel at the June 16, 2010 hearing on the matter, the Court issues this order GRANTING in part and DENYING in part defendants' Motion to Compel Deposition for the reasons set forth below.

**BACKGROUND**

Plaintiff Jane Doe was a 15 year-old minor student at Willits Charter School when she was allegedly subjected to sexual molestation by her teacher Clint Smith, then 38-years old, beginning in March 2008 and continuing through January 2, 2009. Sally Rulison was the director/principal of

Willits Charter School during that time. More specifically, plaintiff claims that Smith engaged in increasingly intimate sexual behavior with her, including unprotected intercourse, and that Rulison and the school learned about this conduct and did not take prompt or appropriate steps to prevent injury to plaintiff. Plaintiff filed 42 U.S.C. § 1983 claims against Willits Charter School and Rulison for failure to train and supervise, and against Mr. Smith for denial of equal protection. Plaintiff also filed a Title IX sex discrimination claim against all three defendants, a state law claim for negligent hiring and supervision against Willits Charter School, and a state law invasion of privacy claim against Rulison, who allegedly made a public announcement to the student body, disclosing details of the sexual conduct between plaintiff and Smith.[1]

Defendants' present motion stems from the deposition of plaintiff that began on March 19, 2010 but could not be completed due to the inability of counsel to agree on the proper scope of questioning. In particular, the parties disagreed over whether and to what extent defense counsel could ask plaintiff questions of a sexual nature. Defendants' motion also challenged the conduct of plaintiff's counsel during the deposition.

## DISCUSSION

**I.   Guiding Principles For Deposition Questions Involving Plaintiff's Sexual Behavior**

As a general matter, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, in this case plaintiff is both a minor and an alleged victim of sexual misconduct. For this reason, the scope of discovery must be determined with reference to Federal Rule of Evidence ("FRE") 412, which generally excludes evidence offered to prove any alleged victim's sexual predisposition or past sexual behavior. *See, e.g., Barta v. City and County of Honolulu*, 169 F.R.D. 132, 135 (D. Haw. 1996) ("Although Rule 412 is a rule controlling the

---

[1] Defendant Willits Unified School District was dismissed from the action on summary judgment shortly after joining in the present motion.

2

admissibility of evidence rather than its discoverability, [it] also must inform the proper scope of discovery . . . ."); *Giron v. Corrections Corp. of Am.*, 981 F. Supp. 1406, 1407 (D.N.M. 1997) (to extent defendants seek to inquire into areas that will clearly fail to satisfy Rule 412's admissibility requirements, court may impose restrictions on discovery notwithstanding generally broad scope afforded by Rule 26.)

The purpose of FRE 412 is "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." Advisory Committee Notes to the 1994 Amendments of Fed. R. Evid. 412. Indeed, the Committee Notes advise that "[c]ourts should *presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery*." Advisory Committee Notes to the 1994 Amendments of Fed. R. Evid. 412, subdivision (c) (emphasis added).

Thus, one guiding principle in determining the proper scope of deposition questions in this case is that questions delving into plaintiff's sexual behavior or disposition should not be allowed absent an affirmative demonstration by defendants that the information sought is relevant to a claim or defense.

On the other hand, another guiding principle here is that defendants have a right to conduct discovery to understand plaintiff's claims and to prepare their defense. Plaintiff cannot use FRE 412 as both a shield and a sword. If plaintiff intends to make affirmative use of evidence regarding her sexual conduct, then defendants should be given an opportunity to test that information through discovery. Stated another way, plaintiff cannot use at trial any evidence that she does not allow defendants to discover.

With these guiding principles in mind, the Court addresses the following subject areas of discovery sought by defendants.

3

### A. Sexual Activity with Defendant Clint Smith

At oral argument, plaintiff's counsel agreed that in order to establish the Section 1983 and Title IX claims, plaintiff will have to present evidence of the sexual conduct that occurred between plaintiff and Smith. The subject of sexual activity between plaintiff and Smith is therefore inextricably tied to a "party's claim or defense." However, plaintiff's counsel represented that plaintiff need not, and does not intend to present any graphic sexual details as part of her case. Defense counsel conceded during argument that such details are not tied to a claim or defense. Therefore, the scope of questioning on this subject shall be limited to *what* sexual encounters took place (seeking only a superficial description, e.g., "kissing," "oral sex," or "intercourse," but not the explicit details -- with one exception discussed directly below), as well as *where* and *when* they took place, and *who* was present. The Court finds that these questions are reasonably calculated to lead to the discovery of admissible evidence, and are likely to elicit relevant information about Plaintiff's alleged sexual history while simultaneously affording her the protections embodied in FRE 412.

Because a third party's knowledge of plaintiff's sexual encounters with Smith is relevant to the claims regarding defendants' knowledge and deliberate indifference, defendants may also inquire as to who knew about the sexual incident(s), how they knew, what they knew, and what was done with that knowledge. For example, defendants may ask if plaintiff informed anyone about a sexual incident through any means (including phone, email, text message, etc.). If plaintiff answers that she did tell a third party about a sexual incident, defense counsel may then -- and only then -- inquire about the details of what was conveyed to the third party in that specific instance, even if what was said includes sexually explicit details.

Finally, defendants are also permitted to inquire as to plaintiff's knowledge of Smith's prior history of sexual relationships with other students. Such questions may be relevant to elements of plaintiff's claims, and do not pertain to plaintiff's own sexual behavior and therefore do not invoke the restrictions of FRE 412.

### B. Plaintiff's Sexual Activity with Others

At oral argument, the Court asked defense counsel whether it could make any proffer that questions about plaintiff's sexual activity with others is relevant to the claims or defenses in this

4

case. Defense counsel only offered one justification for such discovery, concerning plaintiff's claims of physical injury. This area of questioning will be permitted, and is discussed below in Section I.D.1. However, given that defendants did not identify any other theory that would allow them to question plaintiff about her sexual activity with others, such questioning shall not be allowed.

**C.     Questions About Plaintiff's "Consent" or "Welcomeness"**

The parties' briefs did not adequately address whether plaintiff's "consent" to Smith's sexual behavior is part of an element or defense in this case.[2] As set forth above, defendants must affirmatively demonstrate that questions involving plaintiff's sexual behavior are relevant to a claim or defense before they will allowed to ask such questions. Here, defendants did not offer a single citation suggesting that plaintiff's "consent" to Smith's sexual behavior is relevant to any claim. Plaintiff relies only on cases outside the Ninth Circuit. *See* Plaintiff's Opposition to Defendants' Motion to Compel Deposition of Plaintiff (Docket No. 90), 7-11.

The Court's independent research indicates that the question has not yet been addressed in this circuit. While some cases within the Ninth Circuit recite "welcomeness" among the elements in a Title IX sexual harassment claim, none have actually analyzed that element in the Title IX context.[3] *See, e.g.*, *Doe by and Through Doe v. Petaluma City Sch. Dist.*, 949 F. Supp. 1415, 1427 (N.D. Cal. 1996) (importing the Title VII hostile environment standard—including "unwelcome" harassment—to the Title IX context, but not analyzing the unwelcome element); *Stanley v. Trs. of the Cal. State Univ.*, 433 F.3d 1129, 1137 (9th Cir. 2006) (quoting Title VII's sexually hostile workplace standard—including the "unwelcome" element—in the context of determining the statute of limitations for Title IX claim); *Ray v. Antioch Unified Sch. Dist.*, 107 F. Supp. 2d 1165, 1170 (N.D. Cal. 2000) (referring to "unwelcome sexual comments and advances" as an example of sexual harassment, but not analyzing welcomeness as an element of a Title IX claim); *Gallant v. Board of*

---

[2] The question of plaintiff's "consent" to sexual encounters with Smith can also be discussed in terms of whether Smith's sexual behavior was "unwelcome" by plaintiff.

[3] It appears that cases may not have reached the question because the conduct at issue in a particular case was patently unwelcome (e.g., sexual assault), or because the case turned on another element, eliminating the need for the court to reach the question of whether "consent" or "welcomeness" is properly part of a Title IX claim.

5

*Trustees of Cal. State Univ.*, 997 F. Supp. 1231, 1234 (N.D. Cal. 1998) (applying Title VII principles—including the "unwelcome conduct" element—to guide resolution of a Title IX claim, but focusing on the "sufficiently severe or pervasive" element).

In contrast, cases outside the Ninth Circuit specifically have considered whether consent is an element of a Title IX case. Each of these cases has held that consent is *not* part of the cause of action. *See, e.g.*, *Mary M. v. North Lawrence Community Sch. Corp.*, 131 F.3d 1220 (7th Cir. 1997) (13-year old student could not "welcome" advances of 21-year old school employee; if "children cannot be said to consent to sex in a criminal context, they similarly cannot be said to welcome it in a civil context. To find otherwise would be incongruous."); *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695 (E.D. Pa. 2007) (notwithstanding high school senior's voluntary and willing participation in sexual relations with a teacher, the student cannot "welcome" the teacher's sexual advances if she lacks the capacity to consent).

In *Mary M.*, the Seventh Circuit declined to import the "welcomeness" inquiry of Title VII employment discrimination cases to a Title IX case in a school setting, reasoning that "sexual harassment in the workplace is vastly different from sexual harassment in a school setting." 131 F.3d at 1226. The court explained:

> The ability to control and influence behavior exists to an even greater extent in the classroom than in the workplace, as students look to their teachers for guidance as well as for protection. The damage caused by sexual harassment also is arguably greater in the classroom than in the workplace, because the harassment has a greater and longer lasting impact on its younger victims, and institutionalizes sexual harassment as accepted behavior. Moreover, as economically difficult as it may be for adults to leave a hostile workplace, it is virtually impossible for children to leave their assigned school. Finally, a nondiscriminatory environment is essential to maximum intellectual growth and is therefore an integral part of the educational benefits that a student receives. A sexually abusive environment inhibits, if not prevents, the harassed student from developing her full intellectual potential and receiving the most from the academic program.

*Id.* (quoting *Davis v. Monroe County Bd. of Educ.*, 74 F.3d 1186 (11th Cir. 1996), *rev'd en banc on other grounds*, 120 F.3d 1390 (11th Cir. 1997)). Furthermore, the *Mary M.* court noted that (1) "[s]chools are charged with acting in loco parentis, while employers owe no such duty to their employees"; and (2) "employees are older and (presumably) know how to say no to unwelcome advances, while children may not even understand that they are being harassed." *Id.* at 1226-27.

In *Chancellor*, the Eastern District of Pennsylvania similarly held that a high school student

lacks capacity to welcome a teacher's sexual advances where the teacher exercises *in loco parentis* authority over the student. 501 F. Supp. 2d at 706. In so holding, the court cited with favor several cases from other jurisdictions in which courts "have implicitly presumed, without much discussion, that a high school student's having sexual contact with her teacher constitutes sexual harassment or abuse." *Id. See also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) ("No one questions that a student suffers extraordinary harm when subjected to sexual harassment and abuse by a teacher, and that the teacher's conduct is reprehensible and undermines the basic purposes of the educational system."). The common theme of *Mary M.* and *Chancellor* is that consent or welcomeness should not be conflated with capacity to consent, and that where capacity is absent, any evidence of consent or welcomeness is irrelevant as a matter of law.[4]

To the extent that cases squarely have addressed the question of whether "consent" or "welcomeness" is an element of a Title IX claim, the answer has been a resolute "no." However, because the law in this circuit is unsettled, and because this Court does not wish to prematurely define the elements of the causes of action in this case (a question more properly addressed by the trial judge), this Court will allow limited questions on the issue of whether plaintiff welcomed or consented to her sexual encounters with Smith. Defendants therefore *generally* may ask plaintiff whether she wanted to engage in sexual conduct with Smith, and/or whether she initiated the sexual relationship. In keeping with the guiding principle of FRE 412, however, defendants may not inquire as to plaintiff's sexual behavior in an attempt to establish that consent to any particular incident was implied by her conduct. Furthermore, as the Court instructed at the hearing, defendants shall not ask plaintiff about who initiated each individual sexual encounter.

The Court reminds the parties that the scope of permissible discovery is distinct from the breadth of evidence that ultimately is admissible under the Federal Rules of Evidence. This order,

---

[4] Both *Mary M.* and *Chancellor* look to the states' criminal laws to analyze a student's "capacity" to consent. Plaintiff points to California Penal Code §§ 261.5 and 288 to support her argument that, as a fifteen-year old, plaintiff lacked the capacity to "consent" to Smith's advances. However, again, California case law is unsettled on this point. *Compare People v. Tobias*, 25 Cal. 4th 327 (2001) (discussing "consent" in incest cases; even if minor victim "consent," minor is still a victim of a crime) *with Donaldson v. Dept of Real Estate*, 134 Cal. App. 4th 948 (2005) (Department of Real Estate could not revoke license based on conviction for unlawful intercourse with a minor, where evidence failed to establish minor's unwilling participation).

7

1 therefore, does not purport to indicate to the parties what evidence, even if discoverable, may
2 ultimately be deemed admissible at trial.

### D. Damages

#### 1. Physical Injuries

Plaintiff's counsel stated at the hearing that plaintiff's sole claim for physical injury is a torn hymen resulting from sexual intercourse with Smith (i.e., that plaintiff lost her virginity to Smith). To test the truth of plaintiff's assertion, defendants may ask plaintiff about any potential causes of her physical injury that are non-sexual. Additionally, defendants may ask plaintiff whether she engaged in any sexual activity, other than intercourse with Smith, that may have caused the torn hymen. If, but only if, plaintiff responds in the affirmative, defendants may ask follow-up questions to learn the basic (but not explicit) details of the particular sexual activity.

Because plaintiff has put no other physical injury at issue, defendants may not seek discovery related to plaintiff's private medical history, including the results of any physical examinations or testing for sexually transmitted diseases alleged to have taken place at some time after Smith's arrest. If, however, plaintiff determines upon further investigation that she or one of her experts will rely on any testing, records, or outcomes of any physical examinations, plaintiff shall notify defendants immediately and shall make plaintiff available for deposition to allow inquiry into those matters.

#### 2. Emotional Injuries

Defense counsel stated at the hearing that defendants do not seek discovery on plaintiff's sexual behavior to identify other possible causes of her alleged emotional injuries. Rather, defendants seek—and the Court hereby allows—non-sexual discovery regarding the nature of plaintiff's relationships with family and friends, how she has been operating in her day-to-day life, and whether there are any other stressors in her life that may have contributed to emotional injuries. However, the Court is imposing a temporal perimeter of five years prior to the incidents giving rise to this lawsuit. Plaintiff was fifteen years old at the time of the incidents. Complaint (Docket No. 1)

¶ 1. Thus, Defendants may ask questions regarding other possible causes of plaintiff's emotional injuries going back to the time when plaintiff was ten years old.

Additionally, because plaintiff expects to introduce evidence on the long-term effects of her sexual encounters with Smith on her ability to relate to men—including interruptions of plaintiff's dating and sex life—defendants may ask plaintiff general questions about her dating life and how her relationship with Smith has affected her feelings about men.

Finally, because plaintiff expects to introduce evidence about the effects suffered from Rulison's alleged invasion of plaintiff's privacy, defendants may inquire generally about the reputational damage that plaintiff sustained. Defendants may not, however, ask about past sexual behavior to imply a pre-existing reputation.

## II. Deposition Time and Conduct

The deposition of plaintiff Jane Doe is set for **Monday, June 28, 2010, at 11:00 a.m.** Counsel and the deponent shall meet in Judge Ryu's chambers at the U.S. District Court, 1301 Clay Street, Oakland, California 94612, Suite 210C (second floor). The deposition shall be no longer than four (4) hours, exclusive of breaks. A representative from Judge Ryu's chambers shall be present at the deposition.

Counsel shall not make speaking objections at the deposition. Objections for relevance are hereby preserved, and shall not be made during the deposition. Plaintiff's counsel may only instruct the witness not to answer a question on the grounds of privilege, violation of court order, or privacy with regard to medical condition(s) wholly unrelated to this lawsuit.

## III. Defendants' Motion for Sanctions

Given the Court's ruling in this matter, defendants' motion for sanctions is hereby **DENIED**. The June 24, 2010 hearing on that motion is hereby **VACATED.**

IT IS SO ORDERED.

Dated: June 23, 2010

_____
DONNA M. RYU
United States Magistrate Judge