LOUIS A. LEONE (SBN: 099874)
KATHERINE A. ALBERTS (SBN: 212825)
**STUBBS & LEONE**
A Professional Corporation
2175 N. California Blvd., Suite 900
Walnut Creek, CA 94596
Telephone:     (925) 974-8600
Facsimile:      (925) 974-8601

Attorneys for Defendants
WILLITS CHARTER SCHOOL and
SALLY RULISON

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, a minor, through KRISTEN D., Guardian ad Litem,<br><br>            Plaintiff,<br><br>    vs.<br><br>WILLITS UNIFIED SCHOOL DISTRICT, WILLITS CHARTER SCHOOL, SALLY RULISON, CLINT SMITH and DOES 1-40,<br><br>            Defendants. | Case No.:  CV 09-3655 JSW<br><br>**DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date: August 13, 2010**<br>**Time: 9:00 a.m.**<br>**Courtroom: 11, Hon. Jeffrey S. White** |

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ..................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT ............................................................................................................... 7

I.      PLAINTIFF'S FIRST CLAIM BASED ON SECTION 1983 FOR VIOLATION OF THE FOURTEENTH AMENDMENT IS WITHOUT MERIT ............................................... 7

     A.      WCS And Ms. Rulison Are Not Directly Liable for Smith's Sexual Misconduct.................................................................................... 8

     B.      Plaintiff Cannot Establish Liability Against WCS, As A Local Government Entity,Under Section 1983.................................................. 8

         1.      Plaintiff cannot identify a policy, custom or practice of WCS that caused her constitutional rights to be violated ......................... 9

             a.      An official policy, custom or practice of WCS did not authorize Smith to engage in sexual relations with Plaintiff. ....................... 9

             b.      An official policy, custom or practice of WCS did not authorize Ms. Rulison to ignore a complaint or knowledge of a sexual relationship between Plaintiff and Smith...................................... 9

             c.      Plaintiff cannot rely on "failure to train" by WCS to establish a policy or custom violation of her due process rights .................. 11

             d.      Plaintiff cannot prove that any WCS policy, custom, practice or failure to train was the "moving force" behind her injury. .......... 12

         2.      Plaintiff cannot hold WCS liable under Section 1983 for a constitutional tort committed by a WCS official with final-policy making authority.... 13

         3.      An official with final policy making authority did not ratify Smith's sexual relationship with Plaintiff. ...................................................................... 14

         4.      Plaintiff cannot establish liability against WCS based on an affirmative duty ........................................................................................................... 15

     C.      Plaintiff Cannot Establish that Ms. Rulison Violated Her Fourteenth Amendment Rights. .................................................................................. 16

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND     Case No.: CV 09-3655 JSW
MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS
AND AUTHORITIES

i

1.   Liability against Ms. Rulison cannot be based on the events of the June 2008 party. .................................................................................. 16

2.   Ms. Rulison did not learn of Smith's sexual relationship with Plaintiff in . December 2008 nor did she act with deliberate indifference. ................. 19

3.   Ms. Rulison did not act with deliberate indifference upon learning of Smith's sexual relationship with Plaintiff in January 2009. ................... 21

II.   PLAINTIFF'S TILTE IX CLAIM IS GROUNDLESS ................................................... 21

III.   PLAINTIFF CANNOT PROVE HER EDUCATION CODE SECTION 200 CLAIM .......................................................................................................... 21

IV.   PLAINTIFF'S CLAIM FOR INVASION OF RIGHT TO PRIVACY IS LEGALLY AND FACTUALLY DEFICIENT .......................................................................... 23

CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Andrews v. Fowler*
98 F.3d 1069 (8th Cir. 1996) ................................................................................ 13

*Black v. Ind. Area. School District*
985 F.2d 707 (3d Cir. 1993)................................................................................. 20

*Board of City Commissioners of Byran City v. Brown*
520 U.S. 397 (1997)....................................................................................... 8, 12

*Botello v. Morgan Hill Unified School District*
2009 WL 3918930 (N.D. Cal. 2009) ................................................................. 22

*City of St. Louis v. Praprotnik*
485 U.S. 112 (1998).......................................................................................... 10

*DeShaney v. Winnebago City Dept. of Social Services*
484 U.S. 189 (1989).......................................................................................... 15

*Doe v. Benicia Unified School District*
206 F. Supp.2d 1048 (E.D.Cal. 2002)........................................... 2, 10, 16, 19

*Doe v. Dallas Ind. School District*
153 F.3d 211 (5th Cir. 1998) ............................................................................. 21

*Doe v. Taylor Ind. School District*
15 F.3d 443 (5th Cir. 1994) ................................................................. 10, 11, 20

*Doe v. Dickenson*
615 F.Supp.2d 1002 (D.Ariz. 2009) ............................................................ 12, 13

*Donovan v. Poway Unified School District*
167 Cal.App.4th 567 (2008) ............................................................................. 21

*Dorothy J v. Little Rock School District*
7 F.3d 729 (8th Cir. 1993) ................................................................................ 16

*D.R. by L.R. v. Middle Bucks Area Vocational Tech. School*
972 F.2d 1364 (3rd Cir. 1992) .......................................................................... 16

*Garcia v. Clovis Unified School District*
627 F.Supp.2d 1187 (E.D.Cal. 2009)............................................. 2, 15, 19, 20, 21

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND          Case No.:  CV 09-3655 JSW
MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS
AND AUTHORITIES

iii

*Gates v. Unified School District No. 449*
996 F.2d 1035 (10th Cir. 1993) ................................................................. 18

*Gebser v. Lago Vista Independent School District*
524 U.S. 274 (1998)......................................................................... 19, 21

*Gibson v. County of Washoe*
290 F.3d 1175 (9th Cir. 2002) ..................................................................... 9,

*Gillette v. Delmore*
979 F.2d 1342 (9th Cir. 1992) ..................................................................... 8,

*Hill v. Nat'l Collegiate Athletic Association*
7 Cal.4th 1 (1994) ........................................................................... 23

*Jane Doe A. v. Spec. School District of St. Louis*
901 F.2d 642 (8th Cir. 1990) ................................................................. 11, 18

*J.O. v. Alton Community Unified School District 11*
909 F.2d 267 (7th Cir. 1990) .................................................................. 16

*John R. v. Oakland Unified School District*
48 Cal.3d 438 (1989) ........................................................................ 14, 15

*Jojola v. Chavez*
55 F.3d 488 (10th Cir. 1995) ................................................................ 16, 18

*Monell v. Dept. of Soc. Services*
436 U.S. 658 (1978)......................................................................... 8, 12

*Morrow v. Los Angeles Unified School District*
149 Cal.App.4th 1424 (2007).............................................................. 2, 24

*Oden v. N. Marianas College*
440 F.3d 1085 (9th Cir. 2006) .............................................................. 18, 21

*Plumeau v. Yamhill County School District No. 40*
907 F.Supp. 1423 (D.Ore. 1995)....................................................*passim*

*Plumeau v. Yamhill County School District*
130 F.3d 432 (9th Cir. 1997) ............................................................... 11, 22

*Santos v. City of Culver City*
228 Fed. 655 (9th Cir. 2007).................................................................. 13

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND          Case No.:  CV 09-3655 JSW
MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS
AND AUTHORITIES

iv

*Shulman v. Group W Productions, Inc.*
18 Cal.4th 200 (1998) ............................................................................................... 2, 23, 24

*Thelma D. by and through Delores A. v. Board of Education of the City of St. Louis*
934 F.2d 929 (Cir. 8th 1991) ............................................................................................ 11, 12

*Walker v. City of New York*
974 F.2d 293 (2d Cir. 1992)................................................................................................ 12

*Walton v. Alexander*
44 F.3d 1297 (5th Cir. 1995) .............................................................................................. 16

## Statutes

42 U.S.C. Section 1983 ............................................................................................. 1, 8, 11, 16

California Civil Code § 47 ............................................................................................... 2, 23, 24

California Education Code § 200 ........................................................................................ 1, 21

California Government Code § 820.2 ................................................................................. 2, 24

Federal Rules of Civil Procedure 56 .................................................................................. 1

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND          Case No.:   CV 09-3655 JSW
MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS
AND AUTHORITIES

v

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 13, 2010 at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 11 (19th Floor; Hon. Jeffrey S. White, presiding) of the above-entitled court, located at 450 Golden Gate in San Francisco, California, Defendants WILLITS CHARTER SCHOOL and SALLY RULISON will and hereby do move this Court for summary adjudication as to Plaintiff's First Claim for Violation of Section 1983, Plaintiff's Second Claim for Violation of Title IX, Plaintiff's Fourth Claim for Violation of California Education Code §200 *et seq.*, and Plaintiff's Fifth Claim for Invasion of Privacy, pursuant to Federal Rules of Civil Procedure 56 based on Plaintiff's failure establish the prima facie case of each of her claims.  If the Court grants Defendants' summary adjudication on all Plaintiff's claims, then Defendants ask the summary judgment be entered in their favor.

The Motion is based on this Notice and Memorandum of Points and Authorities, the Declarations of Sally Rulison, Clint Smith, and Katherine A. Alberts and the exhibits attached thereto, all pleadings in this action, as well as any evidence and arguments that may be offered at or before the hearing of this Motion.

## SUMMARY OF ARGUMENT

Plaintiff Jane Doe, through her guardian ad litem, alleges that Defendants Willits Charter School ("WCS") and it Director, Sally Rulison, knew of Plaintiff's sexual relationship with her teacher, Clint Smith, and failed to do anything about it.  These allegations are contrary to the actual facts.  WCS and Ms. Rulison did not learn of Plaintiff and Clint Smith's relationship until January 2009, when one of Plaintiff's friends finally came forth and told Ms. Rulison about the relationship.  That same day, Ms. Rulison reported the situation to Child Protective Services ("CPS") and followed up with CPS and the Mendocino County Sheriff's Department, when they took no action on the report.  It was Ms. Rulison who after seeing no action from the County Sheriffs Department, went to the Willits Police Department and facilitated the police in interviewing WCS students and Plaintiff as part of the investigation that eventually led to Smith's arrest.  Moreover, as soon as she was cleared to do so by the police, she removed Smith from the classroom and placed him on administrative leave.

In a lawsuit, where in order to prove three of her four claims against WCS and Ms. Rulison, Plaintiff has to prove actual knowledge of the sexual nature of Plaintiff's relationship with Smith and Defendants' deliberate indifference to that knowledge, Plaintiff cannot meet this high burden. *Garcia v. Clovis Unified Sch. Dist.,* 627 F.Supp.2d 1187, 1203 (E.D.Cal. 2009); *Doe v. Benicia Unified Sch. Dist.*, 206 F.Supp.2d 1048, 1055 (E.D. Cal. 2002); *Plumeau v. Yamhill County Sch. Dist. No. 40,* 907 F.Supp. 1423, 1436 (D.Ore. 1995) *affirmed by* 130 F.3d 432 (9th Cir. 1997).

Moreover, Plaintiff's last claim for violation of right to privacy is baseless, because Ms. Rulison did not publish any information not already made public by the newspaper or Plaintiff herself, the subject of Plaintiff's relationship with Smith was newsworthy, and Ms. Rulison is immune from liability for any publications she may have made pursuant to California Civil Code §47 and Government Code §820.2. See *Shulman v. Group W. Productions, Inc.*, 18 Cal.4th 200 (1998); *Morrow v. Los Angeles Unified Sch. Dist.*, 149 Cal.App.4th 1424 (2007).

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF FACTS

The WILLITS CHARTER SCHOOL is a public school district. [Complaint, ¶ 7]. The Director of WCS is Sally Rulison, who has acted in that capacity since 2004. [Declaration of Sally Rulison filed in support herewith ("Rulison Dec.") ¶ 1]. As Director, Ms. Rulison oversees the day to day operations of the school which includes the implementation of polices formulated and set by the WCS Board; the Board has final policy making authority for WCS. [Rulison Dec., ¶ 2].

All teachers employed by the school are provided with an employee handbook which includes Board policies including the anti-harassment and discrimination policy; teachers also undergo a background check through the Department of Justice; all teachers acknowledge in writing that they are mandated reporters for suspected physical and sexual abuse. [Rulison Dec., ¶ 4]. All teachers of "core subjects" (mathematics, science, English and history) are certificated through the California Commission on Teacher Credentialing. [Id.]. In 2000, Clint Smith was hired by the WCS Board as a teacher, possessing the requisite educational

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES     Case No.:  CV 09-3655 JSW

2

qualifications and having undergone a background check which did not reveal any criminal activity or allegation of inappropriate sexual behavior. [Rulison Dec., ¶ 5].

In the 2008-2009 school year, the Charter School had approximately 120 students, grades 6 through 12. [Rulison Dec., ¶ 2]. Smith's daughter, A.S., was also a student at Willits Charter School. [Declaration of Clint Smith filed in support herewith ("Smith Dec."), ¶ 4].

In March 2008, Jane Doe, a freshman student at WCS, began playing a computer game called World of Warcraft at the invitation of Smith's daughter; the game typically involved Jane Doe, A.S., A.S.'s boyfriend, and Smith, who at the time, was Jane Doe's math teacher. [Declaration of Jane Doe attached as Ex. D to the Declaration of Katherine A. Alberts filed in support herewith ("Alberts Dec.") ("Ex. D"), 4:1-5, 9:12-14, 57:4-58:8]. The game was played during non-school hours on each player's respective home computers. [Ex. D, 61:16-22].

Sometime between March 2008 and June 2008, Jane Doe told Smith via her home computer that she had feelings for him; he in turn advised that her feelings were reciprocated but could not be acted upon as such would be illegal. [Ex. D, 58:25-59:3, 60:15-18, 61:2-22].

In May of 2008, WCS students along with adult chaperones attended a school sponsored year end field trip to Yosemite. [Deposition of Kristen D, attached as Ex. E to Alberts Dec. ("Ex. E") 91:6-15, 92:25-93:1, 94:3-95:25]. Among the attendees were Jane Doe, her mother, her sister, Smith, his daughter, and Smith's father. [Id.] Sally Rulison was also in attendance. [Id.]. Prior to the field trip, Plaintiff and Smith had never engaged in any physical contact, had never kissed, nor had Smith fondled plaintiff. [Ex. D, 56:2-12]. During the course of the field trip, Jane Doe and Smith kissed; the kisses occurred when others were not around and done in secret. [Ex. D, 69:14-22, 71:17-21, 72:1-3, 78:2-15]. During the course of the field trip, Jane Doe slept in a tent with her mother. [Ex. E, 91:6-15, 102:21-103:2]. Her mother never reported Jane Doe missing or wondered where she was. [Ex. E, 100:5-14, 100:21-101:25].

During the summer of June 2008, Jane Doe and her mother attended a party hosted by Ilsa Graham. [Ex. D, 117:1-9]. Ms. Rulison was neither invited to nor attended the party. [Deposition of Sally Rulison, Ex. H to Alberts Dec. ("Ex. H"), 13:22-25]. The party was by

---

1   invitation only and held at the Graham home. [Smith Dec., ¶ 4; Ex. D, 118:13-22]. Plaintiff

2   was friends with two of Graham's children: W.G. and S.G. [Ex. D, 97:8-10]. Smith and his

3   daughter also attended the party. [Smith Dec. ¶ 4]. During the course of the party, Smith

4   became visibly inebriated, was seen stumbling, falling and leaning on guests for support, and

5   had slurred speech and glassy eyes. [Smith Dec., ¶ 5, Ex. E, 126:2-7, 128:2-9; Deposition of

6   S.S. attached as Ex. F to Alberts Dec. ("Ex. F"), 5:8-10, 47:9-13, 47:25-48:24, 50:3-23, 52:10-

7   25; Deposition of B.P. attached as Ex. G to Alberts Dec. ("Ex. G"), 5:1-10, 46:22-47:7, 58:20-

8   60:3, 60:18-22, 61:3-19; Deposition of Tamara Pearn attached as Ex. I to Alberts Dec. ("Ex.

9   I"), 79:6-13, 80:19-22, 82-84:1-12, 85:18-86:7, 86:14-18, 95:4-14, 96:10-23]. At one point

10  during the party, he was seen by plaintiff's mother and two of plaintiff's friends, S.S. and C.H.,

11  grabbing plaintiff's buttocks. [Ex. E, 125:19-23]. The grab lasted seconds as plaintiff told

12  Smith to stop and he complied. [Ex. D, 113:5-10 & 18-21, 115:18-116:1]. Those who saw or

13  were aware of the buttock grabbing attributed the brief encounter to Smith's drunkenness. [Ex.

14  D, 116:18-117:1; Ex. E., 132:9-17, 151:20-25; Ex. F, 70:5-12; Ex. G, 69:18-21].

15      Gina Hirsch, who drove Smith home from the party, reported his level of intoxication

16  to Sally Rulison. [Smith Dec., ¶ 5; Ex. H, 27:16-28:9]. Gina Hirsch did not tell Ms. Rulison

17  that Smith had grabbed Jane Doe's bottom. [Ex. H, 27:16-28:9.]

18      Tamara Pearn, who had taken Smith's car keys from him and had also helped him up

19  off the ground after he fell, advised Erica Bruce, a WCS Board member, of Smith's

20  drunkenness and the buttocks grab. [Ex. I, 99:9-24, 107:11-108:19; Deposition of Erica Bruce

21  attached as Ex. J to Alberts Dec.("Ex. J'), 5:1-15, 9:1-4, 9:14-11:18]. Ms. Pearn, a mandated

22  reporter who owned and operated a day care facility, did not think Smith's behavior was

23  reportable to CPS. [Ex. I, 17:10-18:3, 99:9-17].

24      Erica Bruce then contacted the president of WCS Board and told him about Smith's

25  drunkenness, who advised her that Ms. Rulison was aware of the matter. [Ex. J, 9:1-4, 9:14-

26  11:8, 13:10-20]. Ms. Rulison did meet with Smith during which time he was verbally

27  reprimanded for being drunk in public and at a social event where WCS students were in

28  attendance. [Smith Dec, ¶ 6; Ex. H, 32:14-33:15].

---

1       The 2008-2009 school year began in late August. [Ex. D, 132:23-133:12]. Jane Doe

2   was a sophomore in high school and Smith was her algebra and physics teacher. [Ex. D, 30:1-

3   10]. In September 2008, Jane Doe and Smith engaged in sexual intercourse for the first time.

4   [Smith Dec., ¶ 7]. The date had been arranged via communications between Jane Doe

5   and Smith on their home computers. [Ex. D, 14:23-25, 142:1-6]. After the school day was

6   over, Jane Doe began walking home and Smith picked her up in his car and drove her to his

7   home during a time he knew his wife and children would not be present. [Ex. D, 142:11-15,

8   142:24-143:7, 143:18-19.]

9       From September 2008 to early January 2009, Jane Doe and Smith engaged in six acts

10  of sexual intercourse. [Ex. D, 151:1-5]. Each act occurred off school grounds; the place and

11  time for each act was arranged by Jane Doe and Smith via communicating on their home

12  computers or text messaging using their personal cell phones. [Smith Dec., ¶ 8; Ex. D, 165:1-

13  12, 168:1-4]. For each rendezvous, the routine was the same: Jane Doe would start walking

14  from school and meet up with Smith; most of the encounters took place in Smith's car in the

15  back parking lot of a bank. [Ex. D, 165:13-20, 166:1-19].

16      After engaging in sexual intercourse with Smith, Jane Doe told her girlfriends, V.S.,

17  C.H., W.G., her sister A.K., and her cousin, K.D., about the relationship. [Ex. D, 149:24-25,

18  151:6-10 & 20-21, 155:7-9 & 20-23]. All were sworn to secrecy; all were students at Willits

19  Charter School with the exception of the cousin. [Ex. D, 150:7-25, 152:6-8, 171:22-172:9].

20      During the course of the relationship and during school hours, Jane Doe and Smith

21  were very careful to maintain a strictly student-teacher relationship in order to not arouse

22  suspicion of their clandestine relationship. [Smith Dec., ¶¶ 2, 7-9; Ex. D, 88:7-22, 136:10-16,

23  158:23-159:4, 182:20-183:2]. Neither Jane Doe's parents are aware of any WCS teachers or

24  any adults who knew of the sexual relationship between Jane Doe and Smith. [Ex. E, 173:11-

25  14; Deposition of Dave D. attached as Ex. L to Alberts Dec, ("Ex. L"), 5:10-14, 150:16-19].

26      In December 2008, students complained that Jane Doe was being disruptive in Smith's

27  class and not being disciplined for behavior while other students were so disciplined. [Smith

28  Dec., ¶ 9; Ex. H, 19:2-20:3]. Ms. Rulison met with Smith; both Smith and Ms. Rulison

---

perceived the discussion to be one of teacher's pet, as Jane Doe was a straight A student. [Smith Dec., ¶ 9; Ex. H, 19:2-20:7]. Ms. Rulison also spoke with Jane Doe who perceived the discussion to be an inquiry about the relationship; Jane Doe lied, denying any relationship with Smith. [Ex. D, 184:1-25, 185:5-186:16]. Jane Doe also initially denied the relationship to the police. [Ex. D, 194:1-20, 197:18-198:15].

On January 8, 2009, plaintiff's friend, C.H., reported to Ms. Rulison that Jane Doe and Smith were involved in a sexual relationship. [Rulison Dec., ¶ 6; Ex. H, 21:1-19]. On that same day, Ms. Rulison personally went to CPS and provided a written report. [Id.]. CPS advised Ms. Rulison that someone from the Sheriff's Department would be in contact with her, and further advised Ms. Rulson to not take any action as to Smith's employment status, such as administrative leave, as such would alert him to the investigation. [Id.]. When the Sheriff's Department had neither contacted her nor returned her calls, Ms. Rulison went to the Willits Police Department on January 12, 2009; the Police Department initiated an investigation. [Id., Dec., ¶ 7]. On January 13, 2009, Ms. Rulison placed Smith on administrative leave pending the outcome of the police investigation. [Id.]. Ms. Rulison also facilitated the investigation by making student witnesses, including Jane Doe, available for questioning. [Id., ¶¶ 8, 9].

Jane Doe, after being questioned by the police, texted R.P., who had not been part of the original group of friends she had confided about the relationship, and asked him to contact Smith to warn him of potential police involvement. [Ex. D, 198:6-199:5, 200:1-11, and excerpts from "exhibit g" to Jane Doe's deposition referenced therein]. W.G., one of Jane Doe's friends who had been told of the relationship told her brother, S.G., who told another WCS student, B.P. [Ex. G, 85:6-21].

After Smith's arrest and being charged with various violations of the Penal Code, Ms. Rulison placed Smith on compulsory leave; he subsequently resigned his position with WCS. [Rulison Dec., ¶ 9]. Prior to his relationship with Jane Doe, Smith had not been sexually involved with any of his female students nor had there been any complaints by female students regarding inappropriate behavior toward them or comments made by him toward them of a sexual nature. [Id., ¶ 5]. Smith had also been a very popular teacher with students and the

parent community. [Id.]. Experts who testified at the criminal proceedings were of the opinion that Smith was neither a predator nor a pedophile. [Excerpts from Smith's sentencing hearing attached as Ex. K to Alberts Dec. ("Ex. K"), 3:1-12, 10:16-21, 12:1-20:14, 71:3-82:25].

On February 4, 2009, Smith's arrest was reported in the local newspaper. [Rulison Dec., ¶ 10 and Ex. A attached thereto]. In response, Ms. Rulison conducted a student assembly. [Id.] Jane Doe was not present. [Id.]. Three mental health care practitioners were in attendance in the event students needed to process the information and their feelings. [Id.]. Some students recall Ms. Rulison mentioning Jane Doe by name; others do not. [Ex. F, 81:2-20, 84:3-5; Ex. G, 106:24-109:11; Deposition of A.K. attached as Ex. M to Alberts Dec. ("Ex. M"), 99:12-20, 100:1-18]. Regardless, Jane Doe had told six fellow classmates of the relationship, some of whom told others. [Ex. G, 85:6-21]. In addition, at least five other students asked Jane Doe if she was the student referenced in the newspaper article and she admitted that she was. [Ex. D, 210:6-211:8]. Jane Doe's mother gave two interviews to the press whereby she was identified as the victim's mother as was her first and last name. [Rulison Dec., ¶ 11, and Ex. B and C attached thereto].

Since the inception of WCS in 1998, there have been no instances of teachers being sexually involved with students other than Clint Smith's relationship with Jane Doe. [Rulison Dec., ¶ 12].

## ARGUMENT

**I.   PLAINTIFF'S FIRST CLAIM BASED ON SECTION 1983 FOR VIOLATION OF THE FOURTEENTH AMENDMENT IS WITHOUT MERIT.**

Section 1983 imposes liability on any person, acting under color of state law, who violates another's constitutional rights. Here, Plaintiff cannot establish that WCS and Ms. Rulison violated her substantive due process rights under the Fourteenth Amendment through Smith's sexual abuse of Plaintiff, or by subjecting Plaintiff to a sexually hostile environment, acting with deliberate indifference upon being provide actual notice of Smith's sexual misconduct, or failing to train Smith once Defendants became aware of such sexual misconduct.

**A.   WCS And Ms. Rulison Are Not Directly Liable For Smith's Sexual Misconduct.**

Plaintiff attempts to hold WCS and Ms. Rulison liable for Smith's "intentional misconduct" and for the hostile environment he allegedly created through this misconduct. However, a public entity is not liable under a *respondeat superior* theory for the unconstitutional acts of its employees in a Section 1983 claim. *Monell v. Dept. of Soc. Svcs*, 436 U.S. 658 (1978); see also *Bd of Cty Comm'rs v. Brown,* 520 U.S. 397, 403-404 (1997). Rather, WCS and Ms. Rulison can only be liable for their direct actions. *Plumeau v. Yamhill County Sch. Dist. No. 40,* 907 F.Supp. 1423, 1436 (D.Ore. 1995) *affirmed by* 130 F.3d 432 (9th Cir. 1997). Such direct actions on the part of WCS and Ms. Rulison cannot be established as a matter of law as set forth below.

**B.   Plaintiff Cannot Establish Liability Against WCS, As A Local Government Entity, Under Section 1983.**

Assuming for the sake of argument that WCS is a "person" under Section 1983,[1] Plaintiff must meet the test set forth in *Monell, supra,* for holding municipality or local governments liable under Section 1983. To establish liability against WCS, Plaintiff must prove that: (1) a WCS employee committed the constitutional violation pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of WCS; (2) the individual who committed the constitutional tort was an official with final policy-making authority and the challenged action itself thus constituted an act of official government policy; or (3) the official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. *Plumeau,* 907 F.Supp. at 1436 citing *Gillette v. Delmore,* 979 F.2d 1342, 1346-47 (9th Cir. 1992). Plaintiff must also prove that WCS' action or inaction was the moving force or cause of her constitutional injury.

---

[1] Defendants' liability under Section 1983 is the subject of another motion for summary judgment currently pending before the Court. Section 1983 requires that a "person" violate Plaintiff's constitutional rights. WCS and Ms. Rulison, in her official capacity, are not "persons" under Section 1983, because they are "arms of the State" of California. This argument has been fully briefed by both sides and the parties are awaiting the Court's decision on this Motion. Therefore, Defendants will not repeat these same arguments in this Motion. The arguments set forth herein are not to be construed as a waiver of Defendants' position that WCS and Ms. Rulison in her official capacity are not "persons" subject to liability under Section 1983, and are therefore entitled to judgment in their favor on Plaintiff's Section 1983 cause of action.

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES          Case No.:  CV 09-3655 JSW

8

1   *Gibson v. County of Washoe*, 290 F.3d 1175, 1193-94 (9th Cir. 2002).  As discussed below,

2   Plaintiff cannot meet any of these tests to impose liability against WCS.

3           **1.      Plaintiff cannot identify a policy, custom or practice of WCS that**
                      **caused her constitutional rights to be violated.**
4

5           Plaintiff claims two WCS employees violated her Fourteenth Amendment rights --

6   Smith and Ms. Rulison.  Smith allegedly did so by engaging in sexual relations with Plaintiff, a

7   crime for which he pleaded guilty and served jail time.  Ms. Rulison allegedly violated

8   Plaintiff's Fourteenth Amendment rights by failing to act upon learning of the sexual

9   relationship between Smith and Plaintiff.  Moreover, Plaintiff claims that WCS failed to train

10  Smith about appropriate behavior with female students.  However, regardless of the theory,

11  Plaintiff cannot establish her prima facie case.

12          **a.      An official policy, custom or practice of WCS did not**
                      **authorize Smith to engage in sexual relations with Plaintiff.**
13

14          Plaintiff cannot prove a policy, custom or practice of WCS by which Smith was allowed

    to engage in criminal sexual relations with Plaintiff or allegedly create a sexually hostile

15  environment.[2]  Such a policy, custom or practice does not exist.  Instead, WCS has the exact

16  opposite policy that prohibits sexual harassment and discrimination based on gender.  [Rulison

17  Dec., ¶ 3].  Smith received this policy as well as in his Employee Handbook and he signed an

18  acknowledgment of the mandated reporting requirements.  [Rulison Dec., ¶4; Smith Dec., ¶2.]

19  Moreover, even if such a policy, custom or practice did exist, it would be null and void as

20  contrary to the law and public policy – as a school district does not have the authority to adopt

21  policies that run contrary to state law and sanction criminal behavior.  See *Plumeau*, 907

22  F.Supp. at 1437.

23          **b.      An official policy, custom or practice of WCS did not**
                      **authorize Ms. Rulison to ignore a complaint or knowledge of a**
24                    **sexual relationship between Plaintiff and Smith.**

25          WCS has a policy which requires its employees to report allegations of suspected child

26  abuse to the proper authorities in compliance with California law.  [Rulison Dec., ¶ 4; Smith

27  _____

28  [2] Plaintiff herself has admitted she did not feel harassed by Smith, frightened of Smith, or force to do anything she
    did not want to do.  [Ex. D, 87:10-18.]

Dec., ¶ 2]. Moreover, there is <u>no</u> evidence which establishes that WCS had a custom or practice of ignoring complaints regarding sexual abuse of students. Instead, the relationship at issue is the first and only case of sexual abuse of a student by a teacher at WCS. [Rulison Dec., ¶ 12]. Moreover, when discovered, Ms. Rulison did not ignore it but reported it to CPS, followed up with law enforcement, facilitated the police investigation by providing access to witnesses, and removed Smith from the school by placing him on leave. [Id., ¶¶6-9.] Such conduct demonstrates that WCS had a policy and practice of reporting criminal behavior, and belies any custom or practice at WCS of ignoring complaints of abuse.

It is anticipated that Plaintiff will argue WCS had a long-standing practice or custom of ignoring reports of sexual abuse by claiming that Ms. Rulison had actual knowledge of the relationship with Smith in December 2008 and did nothing in response to that report. Assuming this were true, it would not constitute "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is <u>so permanent and well-settled</u> as to constitute a custom or usage with the force of law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1998) (citations omitted) (emphasis added).

However, in December 2008 Ms. Rulison did not receive a report of a sexual relationship between Plaintiff and Smith. Rather, she heard complaints by students that Plaintiff was not being disciplined by Smith for behavior for which other students were disciplined. [Ex. H, 19:2-20:3.] This behavior is not clearly sexual in nature and hardly constitutes "facts or a pattern of inappropriate sexual behavior by [Smith] pointing plainly to the conclusion that [he] was sexually abusing [Plaintiff]." *Doe v. Benicia Unified Sch. Dist.*, 206 F.Supp.2d 1048, 1055 (E.D. Cal. 2002); *Plumeau*, 907 F.Supp. at 1440, citing *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994), cited with approval by *Plumeau v. Yamhill Sch. Dist.*, 130 F.3d 432, 438-439 (9th Cir. 1997) (hereinafter "*Plumeau II*"). Moreover, Plaintiff herself admits that she and Smith, while at school, maintained a strictly student-teacher relationship and did not engage in any conduct that would give WCS reason to suspect they were involved in a sexual relationship. [Ex. D, 88:7-22, 136:10-16, 158:23-159:4, 182:20-183:2; Smith Dec., ¶9]. Without evidence that Ms. Rulison learned about the sexual relationship between Plaintiff and

---

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

Case No.: CV 09-3655 JSW

Smith in December 2008, Ms. Rulison's alleged failure to report it does not establish a policy, custom or practice of ignoring reports of sexual abuse.

Moreover, one instance of an alleged failure to report is not sufficient to demonstrate a "widespread practice" or a "custom which constitutes standard operating procedure" that is permanent and well-settled -- especially when one month later, Ms. Rulison is the person who reported Smith to CPS and the police. *See Plumeau,* 907 F.Supp. at 1438. Moreover, there is no evidence of other students being sexually abused by teachers or of WCS ignoring reports of student abuse. Again, this is the first instance of student abuse reported to WCS and/or Ms. Rulison during the school's history. See *Thelma D. by and through Delores A. v. Bd of Educ. of the City of St. Louis,* 934 F.2d 929 (Cir. 8th 1991) (Five complaints of sexually inappropriate behavior over a sixteen year period that school district failed to report did not constitute a continuing, widespread, persistent pattern of unconstitutional conduct and thus failed to establish a governmental practice or custom in violation of Section 1983); see also *Jane Doe A v. Spec. Sch. Dist. of St. Louis,* 901 F.2d 642 (8th Cir. 1990).

> **c.     Plaintiff cannot rely on "failure to train" by WCS to establish a policy or custom violation of her due process rights.**

WCS employees, including Smith, did receive training on sexual harassment, abuse and their duties as mandated reporters. [Rulison Dec., ¶ 4; Smith Dec., ¶ 2]. When hired by WCS, Smith, like all teachers at WCS, received the WCS Employee Handbook setting forth the WCS anti-harassment policies and Smith was required to sign a document setting forth and agreeing to comply with his role as a mandated reporter. [Id.]. Moreover, Smith knew engaging in a sexual relationship with Plaintiff was wrong. [Smith Dec., ¶2.] Therefore, WCS cannot be liable for "failing" to train its employees. See *Thelma D.,* 934 F.2d at 934.

Even if there was a failure to train, WCS' actions do not show deliberate indifference to Plaintiff's rights as it cannot be established that WCS was deliberately indifferent to the need for training. "[T]he need for training must be obvious and a violation of constitutional rights must be a highly predictable consequence." *Plumeau II,* 130 F.3d at 439, n.2. Therefore, WCS must have had knowledge that Smith posed a threat to Plaintiff or other students and thereby needed additional training. *Plumeau,* 907 F.Supp. at 1440, citing *Doe v. Taylor,* 15 F.3d at 454

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND          Case No.:   CV 09-3655 JSW
MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS
AND AUTHORITIES

11

1    and *Thelma D.*, 934 F.2d at 932-33.  Nothing in Smith's background showed any history or

2    propensity to engage in inappropriate sexual relationships with students. [Rulison Dec., ¶¶ 5,

3    12.]  Smith had been a teacher at WCS since 2000 and Ms. Rulison had not received any

4    complaints about Smith behaving inappropriately with female students. [Id.]  Consequently, until

5    one of Plaintiff's friends came to Ms. Rulison in January 2009 and reported the relationship

6    between Smith and Plaintiff, the need to further train Smith regarding appropriate behavior with

7    female students was not "obvious" nor was Smith and Plaintiff engaging in a sexual relationship

8    "a highly predictable consequence."

9         Moreover, a public entity cannot be held to act with deliberate indifference for failing to

10   train its employees to not engage in sexual relationships with students or sexually abuse

11   students.  "Where the proper response is obvious to all without training or supervision, then the

12   failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support

13   an inference of deliberate indifference by [WCS'] policymakers to the need to train or

14   supervise."  *Doe v. Dickenson*, 615 F.Supp.2d 1002, 1009 (D.Ariz. 2009) *quoting Walker v. City*

15   *of New York*, 974 F.2d 293, 299-300 (2d Cir. 1992).

16               **d.    Plaintiff cannot prove that any WCS policy, custom, practice**
                        **or failure to train was the "moving force" behind her injury.**
17

18        Besides being unable to prove the existence of a WCS policy, practice or custom that

19   authorized Smith to engage in sex with Plaintiff or Ms. Rulison to ignore knowledge regarding

20   the relationship, Plaintiff cannot meet her burden of proof that any WCS action or inaction

21   caused her injury.  Under *Monell*, Plaintiff not only has to prove "but for" causation, but also

22   legal proximate causation.  *Doe v. Dickenson*, 615 F.Supp.2d at 1010.  "Where a plaintiff claims

23   that the municipality has not directly inflicted an injury, but nonetheless has caused an

24   employee to do so, *rigorous standards of culpability and causation* must be applied to ensure

25   that the municipality is not held liable solely for the actions of its employee."  *Bd of Cty*

26   *Comm'rs of Byran Cty v. Brown*, 520 U.S. 397, 405 (1997) (emphasis added).

27        Here, there is no evidence that Smith started a sexual relationship with Plaintiff because

28   of the content or lack of content of any of WCS' policies or training programs.  He himself has

     admitted he knew he was not to engage in a sexual relationship with students and with minors.

---

[Smith Dec., ¶ 2]. Nor is there any evidence that any amount of training or supervision of Smith would have prevented the sexual relationship: Again, Smith knew the risks and consequences if detected. The only "moving force" at issue was the desire to engage in a sexual relationship. By their own admissions, Plaintiff and Smith took great pains to keep their relationship a secret from anyone who would have been watching them at school. [Ex. D 88:7-22, 136:10-16, 158:23-159:4, 182:20-183:2; Smith Dec., ¶9.] All communication between them about the relationship and all sexual encounters occurred off school grounds; their rendezvous were arranged either in the mornings before the start of the school day or at night during their private time and using their personal home computers and cell phones. [Smith Dec., ¶8; Ex.D, 151:1-5, 165:1-20, 166:1-19.] Again by their own admissions, they knew what they were doing was wrong [Ex. D, 150:7-25; 152:6-8, 171:22-172:9, 187:4-188:5; Smith Dec., ¶2.]; they did it anyway, and they were secretive about it. The person in the position and with the power and responsibility to stop it was Smith; his reasons engaging in the relationship had nothing to do with what WCS or Ms. Rulison did or did not do. Therefore, there is no causal link between WCS' actions or inactions and Plaintiff's injury at the hands of Smith. See *Doe v. Dickenson*, 615 F.Supp.2d at 1010-11; *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) ("Andrews simply cannot demonstrate the close relationship necessary to conclude that the city's failure to properly train Fowler caused him to rape Andrews or even raises a question of fact as to causation."); *Santos ex rel. Santos v. City of Culver City*, 228 Fed. Appx. 655, 659 (9th Cir. 2007) (upholding district court's summary judgment in favor of defendant city on grounds that there was no evidence of a casual link between the city's policies and the offending officer's actions). Without causation, Defendants are entitled to summary judgment in their favor.

        **2.**    **Plaintiff cannot hold WCS liable under Section 1983 for a constitutional tort committed by a WCS official with final-policy making authority.**

Here, Plaintiff's allegations are against two WCS employees – Smith and Rulison. As a teacher, Smith was not an official with "final policy-making authority;" he did not have the

power or discretion to set WCS policy. [Rulison Dec., ¶3.] Therefore, the acts of Smith cannot be used to establish "an act of official government policy."[3]

With respect to Ms. Rulison, while she is the director of WCS, all final policy decisions rest in the hands of the Board. [Rulison Dec., ¶ 3]. Therefore, while Ms. Rulison does have discretion and authority to implement Board policy, she is not the final policy making authority, and all her actions are subject to review by the Board. [Id.]. Therefore, as the Board is the only entity with final policy making authority at WCS, and as Plaintiff makes no allegations against the Board, there is no evidence of any Board action that caused Plaintiff a deprivation of her constitutional rights.

To the extent that Ms. Rulison is determined by the court to be an official with final policy making authority, then WCS's liability for her actions would be evaluated under the same test as her own personal liability. *Plumeau*, 907 F.Supp. at 1439-40 (citations omitted). As discussed below in section I.B, Plaintiff cannot establish a prima facie case against Ms. Rulison individually.

### 3. An official with final policy making authority did not ratify Smith's sexual relationship with Plaintiff.

Ratification is an alternative to respondeat superior liability that allows an employer to be held liable for an employee's actions when after being informed of the employee's actions, the employer does not investigate the allegations and fails to repudiate the employee's actions. *Garcia v. Clovis Unified Sch. Dist.*, 627 F.Supp.2d 1187, 1202 (E.D.Cal. 2009). Moreover, ratification liability under Section 1983 requires that the official alleged to have ratified the employee's conduct be one with final policy making authority. As discussed above, the Board has final policy making authority at WCS, not Ms. Rulison. It is undisputed that the Board never learned of any information to give them reason to believe that Smith was having a sexual relationship with Plaintiff. Therefore, it could not have ratified this unknown behavior. And as discussed above, even if Ms. Rulison had final policy making authority, she did not have knowledge of the sexual relationship until January 8, 2009. Far from ratifying Smith's conduct,

---

[3] Additionally, Smith's criminal acts of sexual abuse of a student cannot be imputed to WCS as a matter of law. See *John R. v. Oakland Unified Sch. Dist.*, 48 Cal.3d 438 (1989).

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES      Case No.:  CV 09-3655 JSW

14

1   she turned him into CPS and the Willits Police Department. As such, Plaintiff has not and

2   cannot establish that WCS ratified Smith's criminal behavior.

3     Additionally, based upon the California Supreme Court's decision in *John R. v. Oakland*

4   *Unified Sch. Dist.*, a school district cannot be held liable on a ratification theory. See *Garcia*,

5   627 F.Supp.2d at 1203. *John R.* held as a matter of law a school district could not be held

6   vicariously liable for a teacher's sexual misconduct with a student. *John R.*, 48 Cal.3d 438

7   (1989). Ratification is similar to vicarious liability. *Garcia*, 627 F.Supp. 2d at 1203. No post-

8   *John R.* case has held that a school district can legally ratify such illegal sexual conduct.

   **4. Plaintiff cannot establish liability against WCS based on an affirmative duty.**

10    Although there is not an affirmative duty for a public employee to protect a member of

11  the public from harm by third parties, *DeShaney v. Winnebago Cty Dept. of Soc. Svcs*, 484 U.S.

12  189, 196 (1989), two exceptions exist to this general rule – the "danger-created exception" and

13  the "special relationship" exception. Neither of these two exceptions applies to the instant

14  action.

15    First, the danger created exception requires that WCS either (1) placed Plaintiff with

16  persons known to be dangerous; or (2) provided persons known to be violent or abusive with the

17  means or opportunity to harm Plaintiff. *Plumeau*, 907 F.Supp. at 1443. Here, there is no

18  evidence that WCS knew Smith was dangerous or had any propensity for abuse, sexual or

19  otherwise. [Rulison Dec., ¶¶ 5, 12.] In fact, prior to January 2009, WCS had no knowledge of

20  any complaints against Smith regarding inappropriate sexual behavior with students; nor was

21  there reason for WCS to suspect that Plaintiff was in danger of entering into a sexual

22  relationship with Smith by his presence at school. [Id.] Consequently, Plaintiff cannot rely on

23  the "danger-created" exception.

24    Second, a special relationship between Plaintiff and WCS did not exist so as to give rise

25  to a *constitutional* duty to protect her. Such a special relationship has only been found in cases

26  where a person was placed in the custodial care of the state, such as in a prison or involuntarily

27  psychiatric facility. In these situations, "the state has severely limited the plaintiff's ability to

28  care for him or herself." *Plumeau*, 907 F.Supp. at 1445. This is not the case with a student who

attends a public school. *Id.* In fact, five Circuit Courts of Appeal have held there is no special relationship even when the plaintiff was a student in a residential school: *Jojola v. Chavez*, 55 F.3d 488 (10th Cir 1995); *Walton v. Alexander*, 44 F.3d 1297 (5th Cir 1995); *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729 (8th Cir 1993); *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364 (3rd Cir 1992), *cert denied*, (1993) 506 U.S. 1079; *J.O. v. Alton Community Unified Sch. Dist. 11*, 909 F.2d 267 (7th Cir 1990). Consequently, Plaintiff cannot establish liability against WCS pursuant to Section 1983.

### C.   Plaintiff Cannot Establish that Ms. Rulison Violated Her Fourteenth Amendment Rights.

In order to prove that Ms. Rulison violated her Fourteenth Amendment rights, Plaintiff must prove that:

1) Ms. Rulison learned of facts or a pattern of inappropriate sexual behavior by Smith <u>pointing plainly toward the conclusion</u> that Smith and Plaintiff were engaging in sexual behavior together; and

2) Ms. Rulison demonstrated <u>deliberate indifference</u> towards Plaintiff's constitutional right to be free from sexual abuse; and

3) such failure caused a constitutional injury to Plaintiff.

*Doe v. Benicia*, 206 F.Supp.2d at 1053 (emphasis added). Here, Ms. Rulison did not have knowledge of Smith's sexual relationship with Plaintiff until January 8, 2009. Upon learning of the relationship, Ms. Rulison was not deliberately indifferent, but acted immediately by reporting the relationship to law enforcement. Additionally, even when Ms. Rulison learned of information which did not plainly point to the sexual nature of Plaintiff's relationship with Smith (i.e., the teacher's pet issue), she took appropriately action based on the information she was provided – particularly when Plaintiff herself adamantly denied the existence of a relationship.

### 1.   Liability against Ms. Rulison cannot be based on the events of the June 2008 party.

Plaintiff alleges in June of 2008, Smith was seen at a party fondling Plaintiff's buttocks and holding her hand, and that another parent told a WCS Board member "what she had witnessed and heard about." Plaintiff further alleges that the same parent spoke to the same

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS
AND AUTHORITIES        Case No.:  CV 09-3655 JSW

16

Board member, who told the parent that Ms. Rulison was aware of the situation and was dealing with it.

Contrary to Plaintiff's allegations, it was only reported to Ms. Rulison, who was neither invited to nor attended the party, that Smith had been extremely inebriated at the party. [Ex. H, 27:16-28:7]. By all accounts he was stumbling, staggering, slurring his words, and leaning on people and objects for support. [Ex. E, 126:2-7, 128:2-9; Ex. F, 47:9-13, 47:25-48:24, 50:3-23, 52:10-25; Ex. G, 46:22-47:7, 58:20-60:3, 60:18-22, 61:3-19; Ex. I, 79:6-13, 80:19-22, 82:4-86:18, 95:4-14, 96:10-23]. One party guest drove Smith home, and thereafter reported Smith's drunkenness to Ms. Rulison. [Ex. H, 27:16-28:8.]

Another party guest, who is a trained mandated reporter, advised a WCS Board member of Smith's drunken behavior and the grabbing of plaintiff's buttocks; the guest's main concern, however, was Smith's level of intoxication. [Ex. I, 17:10-18:3, 99-17.] The WCS Board member reported only Smith's inebriation to the Board President, who advised that Ms. Rulison was aware of the situation and had dealt with it. [Ex. J, 9:1-4, 9:14-11:8, 13:10-20.]

Smith being intoxicated at a party is not a pattern or behavior that plainly pointed to the conclusion that Smith was engaging in sexual behavior with Plaintiff. This is particularly apparent when two adults who had actual knowledge of Smith grabbing Plaintiff's bottom, one of whom is a trained mandated reporter, and Plaintiff's own mother, did not suspect that anything sexual was going on between Plaintiff and Smith and did not report it to law enforcement. [Ex. E 139:22-140:12; Ex. I, 17:10-18:3, 99:9-17.] In fact, by all accounts Smith was so drunk, it was determined he did not know who or what he grabbed. [Ex. D, 116:18-117:1; Ex. E, 132:9-17, 151:20-25; Ex. F, 70:5-12; Ex. G, 69:16-21]. Therefore, Ms. Rulison's knowledge of Mr. Smith's intoxication does not constitute behavior pointing plainly to the conclusion that Mr. Smith was engaged in sexual behavior with Plaintiff.

However, assuming arguendo that Ms. Rulison was told that Smith grabbed Plaintiff's buttocks, such knowledge is not enough to plainly point to the conclusion that Smith and Plaintiff were having a sexual relationship. The court in *Plumeau, supra* held that knowledge that a janitor had been watching children on the playground, hugging them, picking them up and

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES     Case No.: CV 09-3655 JSW

17

holding their hands was not enough to find a pattern of sexual behavior. *Id.* at 1440. The court reasoned that these actions could just as easily point to a lazy employee or the friendly gesture of an authority figure who is around children. *Id.*

In *Gates v. Unified School District No. 449* 996 F.2d 1035 (10th Cir. 1993), the court held that knowledge a teacher traveled to attend activities with students and had married a former student when she turned eighteen, along with knowledge of other rumors and innuendo that the plaintiff was infatuated with the teacher and that the teacher encouraged the infatuation, was not sufficient to find liability against the school officials.

Similarly, a janitor observing girls in the locker room through a hole he had put in the wall, alleged to have made sexual comments to girls, and terminated from a previous position as a school bus driver because of inappropriate contact with female students, and transfer to the high school after he unhooked students' bras at a junior high school, was not enough find a pattern of behavior plainly pointing to sexual behavior. *Jojola v. Chavez*, 55 F.3d 448 (10th Cir. 1995).

Summary judgment, in favor of the defendants was affirmed where the school officials had received complaints regarding isolated incidents of a bus driver kissing, fondling and snuggling students. *Jane Doe A v. Spec. Sch. Dist. of St. Louis*, 901 F.2d 642 (8th Cir. 1990). Viewing the evidence in the light most favorable to the plaintiffs, the court reasoned there was not sufficient evidence for a jury to find that the school officials had notice of a pattern of unconstitutional acts by the bus driver. *Id.* at 646; see also *Jane Doe A v. Spec. Sch. Dist. of St. Louis*, 682 F.Supp. 451, 455 (E.D.Mo. 1988).

Therefore, even taking Plaintiff's allegations as true, knowledge that Smith was drunk to the point of being unable to stand up and speak plainly, and while in the presence of Plaintiff's mother and other adults grabbed Plaintiff's bottom for a few seconds, is not enough to plainly point to the conclusion that Smith was engaging in sexual behavior with Plaintiff.

Moreover, in order to prove liability against Ms. Rulison based on this incident, Plaintiff must demonstrate that Ms. Rulison acted with deliberate indifference to the knowledge she received. The courts have held deliberate indifference is the failure to act – not merely inept,

erroneous, ineffective or negligent action or decisions by officials. *Garcia,* 627 F.Supp.2d at 1196-1197; *Doe v. Benicia*, 206 F.Supp.2d at 1056.  See also *Gebser,* 524 U.S. at 290; see also, *Oden v. N. Marianas Coll.,* 440 F.3d 1085, 1089 (9th Cir. 2006).

Here, Ms. Rulison did take action to address the information reported to her after the June 2008 party:  she called Smith and asked him to come to her office for a meeting; she verbally warned and reprimanded Smith for being drunk in public and in front of students. [Smith Dec., ¶ 6; Ex. H, 32:14-33:15.]  This was an appropriate and reasonable response given that Ms. Rulison had no knowledge that Smith allegedly grabbed Plaintiff's bottom at the party. See *Doe v. Benicia*, 206 F.Supp.2d at 1056 (reprimand of janitor after he called student at home was not deliberate indifference).

> ### 2.   Ms. Rulison did not learn of Smith's sexual relationship with Plaintiff in December 2008 nor did she act with deliberate indifference.

Plaintiff alleges that Ms. Rulison knew in December 2008 about the sexual relationship between Smith and Plaintiff and then failed to act on this information.  Plaintiff, however, offers no evidence to support how or why Ms. Rulison supposedly knew of the sexual relationship. [Smith Dec., ¶¶ 7-9; Ex. D, 88:7-22, 136:10-16, 158:23-159:4,182:20-183:2; Ex. E, 173:11-14; Ex. L, 5:10-14, 150:16-19.]  Ms. Rulison testified that at this time she had no information about a sexual relationship.  [Ex. H, 19:2-11, 20:21-21:19.]  Instead, Ms. Rulison was aware of other students' complaints that Smith favored Plaintiff in class by allowing her get away with conduct for which other students were disciplined.  [Ex. H, 19:12-20:31.]  At most, this rumor was one of favoritism to Plaintiff, or in other words that Plaintiff was a "teacher's pet."  If hugging, picking up and holding hands with students, or spying on them in the locker room and making inappropriate sexual comments does not qualify as evidence of sexual behavior, failure to evenly discipline students is not evidence of sexual behavior.

Even if the Court determines that complaints of Smith uneven meting out discipline is actual knowledge of a pattern of behavior plainly pointing to the conclusion that Smith was engaged in a sexual relationship with Plaintiff, Plaintiff still cannot meet the deliberate indifference prong of her prima facie case.  After hearing the student's complaints, Ms. Rulison

---

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

Case No.:   CV 09-3655 JSW

19

met with Smith and Plaintiff separately.  During her meeting with Smith, she asked him if there was any reason for his inconsistent classroom discipline:  Smith denied favoritism toward Plaintiff or that she was a teacher's pet.  [Ex. H, 19:2-20:7.]  Ms. Rulison reminded Smith that it was the policy of the school that all students be treated equally.  [Id.]

The following day, Ms. Rulison met with Plaintiff.  [Ex. H, 20:8-25.]  She asked Plaintiff about her relationship with Smith.  Plaintiff lied and unequivocally denied that she had a relationship with Smith and even said "Eww gross." to convey to Ms. Rulison that having a relationship with Smith was the furthest thought from her mind.  [Ex. D, 184:9-186:16.]

Clearly, Plaintiff and Smith both lied to protect the secret relationship.  [Id.]  Both Plaintiff and Smith knew what they were doing was wrong, was illegal and would result in adverse consequences if it became public.

Even if the Court determines that Ms. Rulison had a scintilla of knowledge of the relationship between Smith and Plaintiff in December 2008, Ms. Rulison still did not act with deliberate indifference:  she investigated the rumors that she heard by questioning both Smith and Plaintiff; she asked Plaintiff if there was a relationship with Smith and Plaintiff lied.  While these actions by Ms. Rulison may be deemed ineffective or negligent and neither stopped nor uncovered the sexual relationship, Ms. Rulison acted on the information she was given – she was not deliberately indifferent to the situation as she saw it.  Negligence is not the same as deliberate indifference; because Ms. Rulison did not discover the clandestine relationship does not mean that she acted with deliberate indifference:  "deliberate indifference is a high standard and requires conduct that is beyond mere negligence . . . a school is not deliberately indifferent simply because the response did not remedy the harassment or because the school did not utilize a particular discipline."  *Garcia*, 627 F.Supp.2d at 1196-97 (citations omitted); see also *Doe v. Taylor*, 15 F.3d at 548 (deliberate indifference not shown were principal reprimanded teacher after discovering photos of student and teacher together); *Black v. Ind. Area. Sch. Dist.*, 985 F.2d 707, 712-713 (3d Cir. 1993) (deliberate indifference not shown where after receiving complaint of possible sexual abuse, superintendent met with parents and alleged offender and

determined no abuse probably occurred); *Doe v. Dallas Ind. Sch. Dist.*, 153 F.3d 211, 218 (5th Cir. 1998) (same).

### 3. Ms. Rulison did not act with deliberate indifference upon learning of Smith's sexual relationship with Plaintiff in January 2009.

The first time that Ms. Rulison had actual knowledge of a pattern of behavior that plainly pointed to the conclusion that Smith had a sexual relationship with Plaintiff was on January 8, 2009, when C.H., Plaintiff's friend, reported the relationship.

Ms. Rulison then immediately reported Smith's relationship with Plaintiff to CPS. When she was not contacted by the Sheriff's office as promised by CPS, she reported the matter to the Willits Police Department and placed Smith on leave when cleared to do so by the police. Ms. Rulison thereafter facilitated the police investigation by helping them interview students, including the Plaintiff, during school hours. These actions do not constitute deliberate indifference, but instead demonstrate the precise opposite.

## II.   PLAINTIFF'S TITLE IX CLAIM IS GROUNDLESS.

Plaintiff's second cause of action for violation of Title IX is brought against WCS. Courts have found that school districts violate Title IX when a district official, who has authority to institute corrective measures, has actual knowledge of the harassment or sexual abuse of a student and is deliberately indifferent to that knowledge. *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 277 (1998). The Supreme Court rejected the idea of imposing liability on a school district based on vicarious liability or constructive "should have known" notice, but rather required actual knowledge on the part of an official with the power to take corrective measures and deliberate indifference by that official. *Id.* at 285; *Oden*, 440 F.3d at 1089. This is the same standard discussed above with respect to Plaintiff's Section 1983 claim against Ms. Rulison. Therefore, for the same reasons, Plaintiff cannot establish her Title IX claim against WCS, and Defendants are entitled to summary judgment on this claim.

## III.   PLAINTIFF CANNOT PROVE HER EDUCATION CODE SECTION 200 CLAIM

California's Education Code §200 *et seq.* is an educational anti-discrimination act; Plaintiff claims WCS failed to control and supervise Smith. The standard to be applied under Education Code §200 *et seq.* is the same standard used in Title IX cases. *Donovan v. Poway*

*Unified Sch. Dist.,* 167 Cal.App.4th 567, 605 (2008); see also *Garcia,* 627 F.Supp.2d at 1195,

n.3; *Botello v. Morgan Hill Unified Sch. Dist.,* 2009 WL 3918930 at *3 (N.D.Cal. 2009).

Therefore, in order to prove that WCS' alleged failure to properly hire or supervise Smith

violated Education Code §200, Plaintiff will have to prove that a WCS official, who has

authority to institute corrective measures, has actual knowledge of the harassment or sexual

abuse of a student, and thereafter was deliberately indifferent to that knowledge by hiring or

failing to supervise Smith.  *Plumeau II,* 130 F.3d at 439, n.4.

Here, there is no evidence that Smith has a history of sexual relations or inappropriate

behavior with students.  [Rulison Dec., ¶ 5.]  WCS ran the legally required background check

on Smith when he was hired, which revealed no history of criminal activity or allegations of

inappropriate relations with students.  [Id.]  Consequently, WCS' decision to hire Smith was not

deliberately indifferent to Plaintiff's rights.

Moreover, Smith was a teacher at WCS from 2000 until he was place on administrative

leave on January 13, 2009.  During this time, WCS and Ms. Rulison never received a complaint

about Smith behaving in a sexually inappropriate manner with students, and did not witness any

behavior she deemed sexually inappropriate.  [Rulison Dec., ¶¶ 5, 12.]  Smith was a long time

teacher at WCS and was universally respected and liked by the school community.  [Id.]

Experts testified at Smith's criminal sentencing hearing that he was not a "predator," had not

engaged in this conduct before and was not likely to engage in it again.  [Ex. K, 3:1-12, 10:16-

21; 12:1-20:14, 71:3-82:25.]

Additionally, as discussed above, in June 2008 and December 2008, Ms. Rulison did not

receive any information that plainly pointed to the conclusion that Smith and Plaintiff were

having a sexual relationship.  Therefore, these incidents do no establish and obvious need for

increased supervision of Smith.

Lastly, as discussed above in Section B.1.d, WCS' alleged failure to supervise Smith

must be the proximate cause of Plaintiff's injuries.  Plaintiff cannot establish causation when

she herself has admitted that she and Smith took great lengths to ensure that their interactions at

school were strictly those of a teacher and a student.  [Smith Dec., ¶¶ 2, 7-9; Ex. D, 88:7-22,

136:10-16, 158:23-159:4, 182:20-183:2.]  Their relationship was illegal and therefore, they knew they had to keep it a secret.  [Smith Dec. ¶¶ 2, 7-9.]  All discussions of their relationship and arrangements to meet took place away from school using their personal computers and cell phones; all sexual encounters took place off school grounds.  [Smith Dec., ¶¶ 7-8; Ex. D, 165:1-12, 168:1-14.]  As such, there is no direct casual link between WCS' level of supervision and Smith and Plaintiff's sexual relationship.  Consequently, Plaintiff cannot prove causation in addition to the other aspects of the prima facie case.

## IV.  PLAINTIFF'S CLAIM FOR INVASION OF RIGHT TO PRIVACY IS LEGALLY AND FACTUALLY DEFICIENT.

Plaintiff alleges that Ms. Rulison invaded her right to privacy by identifying her as Smith's victim to the entire student body at an assembly and discussing the affair in explicit detail.  To state a cause of action for invasion of privacy based on the public disclosure of private facts, a plaintiff must prove the following four (4) elements: (1) public disclosure; (2) of a private fact to which the plaintiff has a reasonable expectation of privacy; (3) which would be offensive and objectionable to the reasonable person; and (4) which is not of legitimate public concern, or i.e. newsworthy.  (*Shulman v. Group W Productions, Inc.,* 18 Cal.4th 200, 214 (1998).)  The absence of any one of these elements is a complete bar to liability.  *Id.* at pp. 214-215.  Moreover, even if Ms. Rulison made the alleged statements, she is immune from liability pursuant to Civil Code §47 and Government Code §820.2.

Ms. Rulison did not publically disclose private facts about Plaintiff.  During this assembly, Ms. Rulison did not discuss explicit details about Plaintiff's relationship with Smith.  To the extent that the students knew any details, the newspaper article, which many of them brought to school that day, detailed the charges against Smith including "oral copulation" and "sexual penetration."  [Rulison Dec. ¶ 10, Ex. A.]  And while Plaintiff has produced no inadmissible evidence that Ms. Rulison mentioned Plaintiff's name during the assembly, even if she did, Plaintiff had no reasonable expectation of privacy in this information.  Plaintiff "must have conducted … herself in a manner consistent with an actual expectation of privacy."  *Hill v. Nat'l Collegiate Athletic Assoc.,* 7 Cal.4th 1, 26 (1994).  Plaintiff herself told at least 11 other students at WCS that she was in a sexual relationship with Smith.  [Ex. D, 149:24-25, 151:6-10,

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES          Case No.:  CV 09-3655 JSW

23

151:20-21, 155:7-9, 155:20-23, 198:6-199:5, 200:1-11, Ex. g referenced therein, 210:6-211:8.]

Some of these students admit to having told others students [Ex. G, 85:6-21] and it is not unreasonable to infer that other students Plaintiff told had also passed along the information.  In a class of 16 students and a high school population of 120 [Rulison Dec., ¶ 2], it does not take long for information such as this to travel to the whole class.  Where Plaintiff made no effort to keep her identity private, she cannot claim that she had a reasonable expectation of privacy.

Secondly, newsworthiness of the subject matter is a complete defense to a right of privacy cause of action.  *Schulman*, 18 Cal. 4th at 215.  Plaintiff cannot dispute that the circumstances surrounding her relationship with Smith, the charges against him and his sentencing attracted much attention in Willits and was the subject of much press coverage.  [See, e.g., Rulison Dec., Exs. A-C.]  The allegations and case against Smith as well as any charge of a teacher having a sexual relationship with a student are very newsworthy subject matters.  Therefore, the discussion at the assembly was the discussion of a newsworthy subject matter and Plaintiff's claim is barred.

Ms. Rulison is also legally immune from liability in this instance under Civil Code §47 and Government Code §820.2.  Civil Code §47 renders public officials immune from liability for publications made in the performance of their official duties.  Official duties "encompass all discretionary acts essential to the proper exercise of an executive function." *Morrow v. Los Angeles Unified Sch. Dist.*, 149 Cal.App.4th 1424, 1442 (2007).  Here, Ms. Rulison, as the director of WCS, recognized the need to allow the students to process their feelings about the situation in an effort to deal with the disruption that Smith's disappearance and arrest caused at WCS.  [Rulison Dec., ¶ 10.]  As such, Ms. Rulison's statements during the assembly were made in the course of performing her official duties in handling a unique and upsetting situation and preventing further disruption and emotional distress to the school and students of which she was in charge.  Consequently, she is immune from liability pursuant to Civil Code §47.

Lastly, Government Code §820.2 provides that public employees are immune from liability for discretionary acts.  Here, Ms. Rulison exercised her discretion as Director of WCS in deciding to use morning circle to allow the students an opportunity to express their emotions and

DEFENDANTS WILLITS CHARTER SCHOOL AND SALLY RULISON'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES                    Case No.:  CV 09-3655 JSW

24

process their thoughts about Smith. [Id.] Consequently, Ms. Rulison is immune from liability
pursuant to the discretionary immunity of the Government Code for all liability arising out of the
assembly.

## CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment or in the
alternative summary adjudication of each of Plaintiff's claims. In the event the court grants
summary adjudication on the Federal claims, but not the State claims, Defendants request that
the court decline to exercise further supplemental jurisdiction and remand the matter to state
court.


Dated: July 8, 2010                              **STUBBS & LEONE**

                                                 *Katherine A Alberts*
                                                 _____
                                                 LOUIS A. LEONE, ESQ.
                                                 KATHERINE A. ALBERTS, ESQ.
                                                 Attorneys for Defendants
                                                 WILLITS CHARTER SCHOOL AND
                                                 SALLY RULISON